WATKINS, et al. *v.* TAYLOR, et al.

Mar. 9, 1953

No. 38683 23 Adv. S. 37 63 So. 2d 225

*Satterfield, Ewing, Williams & Shell,* for appellants.

824

*Robt. E. Covington, Jr.*, for appellees.

**KYLE, J.**

· This is a Workmen's Compensation case. The case is before us upon appeal by Oliver Watkins and his insurance carrier from a judgment of the circuit court of Clarke County affirming an order of the Mississippi Workmen's Compensation Commission awarding compensation. to three illegitimate dependent minor children of Lige Taylor, deceased, under the provisions of the Workmen's Compensation Act, Chapter 354, Laws of 1948, and amendments thereto, and upon cross-appeal by Teressa Jones Taylor, alleged widow of Lige Taylor, deceased, and Jesse James Taylor, another alleged illegitimate child of the deceased, from that part of the judgment of the circuit court which affirmed the order of the Commission disallowing their claims for compensation.

The record shows that Lige Taylor was a log truck driver employed by the appellant, Oliver Watkins, that he died on December 14, 1951, and that his death resulted from accidental injuries arising out of and in the course of his employment. Lige had been married four times. At least three of these marriages were ceremonial marriages, and none of them had been dissolved by death prior to Lige's own death. None of Lige's wives had ever sued him for divorce, and Lige had never sought to obtain a divorce from any of them.

On February 1, 1934, Lige contracted a ceremonial marriage with Ordlean Gray, and lived with her as her lawful husband approximately two and one-half years.

One child was born of this marriage relationship, namely, Bertha May Taylor. The date of her birth was February 1, 1935. This child was the only legitimate child that Lige Taylor had. Lige and Ordlean separated about two and one-half years after the date of their marriage, and on November 16, 1940, Ordlean Gray Taylor entered into a ceremonial marriage with Phillip Wash. The child, Bertha May Taylor, thereafter made her home with her mother, and from the date of her mother's marriage to Phillip Wash until Lige Taylor's death, Ordlean and her husband Phillip cared for and supported the child, and Lige Taylor contributed nothing to her support. No divorce was ever granted to Lige or to Ordlean Gray dissolving their marriage relation.

On May 30, 1937, Lige Taylor entered into a ceremonial marriage with Ella Lee Hamilton and lived with her until the latter part of 1938, when Lige and Ella Lee separated. No children were born of this marriage. On April 1, 1939, Lige Taylor, without procuring a divorce from either of his former wives, entered into a ceremonial marriage with Teressa Jones, whose nickname was "Peewee." Teressa at that time had two illegitimate children, a son known as Johnnie Lee Campbell, who had been born in 1932, and a son known as Jesse James Jones or Jesse James Taylor, who was born February 18, 1936. No claim was ever made that Lige Taylor was the father of Johnnie Lee Campbell. But after Lige Taylor's death a claim was filed with the Workmen's Compensation Commission on behalf of Jesse James Taylor, who claimed to be the acknowledged illegitimate son of Lige Taylor. Teressa and her mother, Rosa Jones, testified that Lige had acknowledged Jesse James as his son. This claim, however, was vigorously denied by other witnesses, who were closely related to the deceased.

The record shows that the marriage relationship between Lige Taylor and Teressa Jones was not entirely harmonious. It is probable that neither spouse was en-

tirely faithful to the other, and after living together "off and on," as Teressa stated, for a period of several years, Lige and Teressa finally separated in 1943, and Teressa went to California. While she was in California Teressa found another colored swain upon whom she was willing to bestow her favors, and in course of time Teressa gave birth to another child who took the name of Willis Jean Taylor. It was never asserted that Lige Taylor was the father of Willis Jean, and no claim has been made for Willis Jean as a dependent illegitimate child of Lige. There is nothing in the record that we now have before us to indicate that Lige Taylor had any desire to follow Teressa to California. On the contrary it appears that a few months after Teressa's departure for California Lige entered into a common law relationship with Mittis Mary Ratcliff, which met all of the legal requirements for a common law marriage, save only that Lige was incapable of contracting a common law marriage because of the fact that his prior marriage to Ordlean Gray had never been dissolved by the death of his former wife or by a decree of divorce. And Lige and Mittis Mary lived together as husband and wife for a period of about five and one-half years. Two children were born of this relationship, a son, Lige Taylor, Jr., who was born January 15, 1945, and a daughter, Allie Helen Taylor who is referred to in the record as "Annie Helen Taylor." Annie Helen was born February 28, 1947. The record shows that Lige acknowledged these two children as his own, and that Lige supported them until the time of his separation from Mittis Mary sometime during the latter part of 1949, and that he contributed money for their support thereafter.

About a year after the birth of Mittis Mary's younger child, Teressa Jones Taylor gave birth to a child, who was given the name of Retha Mae Taylor. The record shows that Lige was living with Mittis Mary when Teressa's child was born. But Teressa testified that

Lige was the father of Retha Mae, and Teressa and her mother, Rosa Jones, testified that Lige acknowledged the child as his own, and that Lige made contributions of money from time to time for the support of the child.

Lige and Mittis Mary drifted apart during the latter part of 1949, and in September, 1950, Mittis Mary entered into a ceremonial marriage with one S. L. Benton, and was living with Benton when Lige was killed three months later. Mittis Mary kept her two children with her, and during that three months period S. L. Benton purchased the groceries for the family and paid the rent on the house which the family occupied. Mittis Mary testified, however, that Lige contributed to the support of the children and gave her money each week to help take care of them.

Lige had been working at Laurel during the early part of the year 1950. He had had trouble with a former employer at Pachuta, and for that reason was unable to return to Pachuta until sometime during the fall of that year. But about two months before his death Lige returned to Pachuta and resumed his amorous relationship with Teressa, and he and Teressa lived together in a boxcar shack in the outskirts of Pachuta during the last two months of his life. Teressa testified that while Lige was in Laurel he had sent word to her to come to Laurel to visit him, and that she had made several trips to Laurel for that purpose. When Lige and Teressa moved into the boxcar shack, Teressa took Retha Mae with her. Her son, Jesse James, however, continued to live with his grandmother. Mittis Mary testified that a few days before Lige's death she and Lige had agreed to go back together on Saturday of the week during which Lige was killed, and Mittis Mary's statement was corroborated by the testimony of Lige's sister-in-law and Lige's father, both of whom testified that Lige had told them a few days before his death that he was going back to live with Mittis Mary.

Claims for compensation allowances were filed with the Compensation Commission on behalf of Teressa Jones Taylor, who claimed as the dependent widow of the deceased, and on behalf of Bertha May Taylor, Jesse James Taylor, Retha Mae Taylor, Lige Taylor, Jr., and Annie Helen Taylor, who claimed as dependent minor children of the deceased.

The hearing officer, after a full hearing, found that Bertha May Taylor was the only legitimate child of the deceased, but that the proof showed conclusively that she was not dependent upon the deceased for support; that Phillip Wash, who had entered into a ceremonial marriage with Bertha May's mother in 1940, had stood in the relationship of a parent to Bertha May for a period of ten years prior to Lige's death; and that Bertha May was not entitled to compensation as a dependent child under the Mississippi Workmen's Compensation Law. The hearing officer also disallowed the claim of Jesse James Taylor on the ground that the proof was insufficient to show that Lige Taylor was the father of Jesse James, or that Lige had recognized Jesse James as his illegitimate child, or that Jesse James was dependent upon the deceased within the terms of the Mississippi Workmen's Compensation Law.

The hearing officer found that Lige Taylor, Jr., and Annie Helen Taylor, the two children born of the marriage relationship of Lige Taylor with Mittis Mary Ratcliff, had been acknowledged by Lige Taylor as his illegitimate children, and that they were wholly dependent upon the deceased. The hearing officer also found that Retha Mae Taylor had been recognized by Lige Taylor as his illegitimate child, and that Lige had contributed to her support. The claims of these three children were therefore allowed.

The hearing officer denied the claim of Teressa Jones Taylor as surviving widow of the deceased, and in doing so said: "While the Mississippi Law was amended in

order to give benefits to a ceremonial wife whose marriage was illegal by reason of her husband's ineligibility, it was not the purpose of such amendment to afford benefits to ceremonial wives who practiced open adultery, and who lived spasmodically with one or several men.'' The hearing officer held that, in view of her admitted adultery with T. C. Forest in the State of California, Teressa was not eligible to claim the benefits of the 1950 amendments to the Mississippi Workmen's Compensation Law (Chapter 412, Laws of 1950), even though she had resumed her marital relationship with the deceased about two months before his death.

' Compensation was awarded by the hearing officer to Lige Taylor, Jr., Annie Helen Taylor and Retha Mae Taylor in the amount of twenty-five percent each of the average weekly wages of the deceased. The claims of Teressa Jones Taylor, as surviving widow, and of Bertha May Taylor and Jesse James Taylor, as dependent minor children, were disallowed.

Upon a hearing and review before the full commission, the findings and awards made by the hearing officer were affirmed by the full commission; and upon appeal to the circuit court the findings and awards of the hearing officer and the order of the commission approving and affirming said findings and awards were affirmed by the circuit court. From that judgment the employer and the insurance carrier have prosecuted this appeal, and Teressa Jones Taylor and Jesse James Taylor have filed cross-assignments of error.

The first point argued by the appellants' attorneys on this appeal is that the lower court erred in affirming the award of compensation to Lige Taylor, Jr., and Annie Helen Taylor, as dependent minor children of the deceased. But we think that there was no error in the action of the circuit court in affirming the award of compensation made by the commission to these two children. The appellants' attorneys practically admit that these

two children were acknowledged by Lige Taylor as his own children; and there is no merit in the appellants' contention that the two children were not dependent upon the deceased within the meaning of the Workmen's Compensation Law for the reason that three months prior to the death of their father, Mittis Mary had entered into a ceremonial marriage with S. L. Benton. The relation of S. L. Benton to the two children at the time of the death of Lige Taylor was not such that it could be said that S. L. Benton stood in the place of a parent to the two children within the meaning of Section 2 (12) of the Mississippi Workmen's Compensation Law.

Section 2 (12) defines "child" as follows:

" 'Child' shall include a posthumous child, a child legally adopted prior to the injury of the employee, a child in relation to whom the deceased employee stood in the place of a parent for at least one year prior to the time of injury, and a stepchild or acknowledged illegitimate child dependent upon the deceased, but does not include married children unless wholly dependent on him."

Section 9, par. (g) of the Workmen's Compensation Law, provides that "all questions of dependency shall be determined as of the time of the injury. A surviving wife, child or children shall be presumed to be wholly dependent. All other dependents shall be considered on the basis of total or partial dependency as the facts may warrant."

S. L. Benton did not stand in the place of a father in his relation to the two children at the time of Lige Taylor's death. S. L. Benton had been married to the mother of the two children only three months when their father was killed. This is not a case where the father had abandoned the children long before his death and a stepfather or other foster parent had assumed the responsibility for the proper support of the children. Mittis Mary testified that Lige continued to give her money for the children after she and Lige had separated. And there is

no substantial contradiction of this testimony in the record. The hearing officer was clearly justified in holding that these two children were entitled to be recognized as dependent children of the deceased.

The next point argued by the appellants' attorneys is that the lower court erred in affirming the award of compensation to Retha Mae Taylor. Retha Mae was born January 25, 1948, about a year after Teressa returned from California. Teressa testified that Lige Taylor was the father of the child and that Lige Taylor acknowledged that he was the father of the child. Teressa's mother, Rosa Jones, testified that Lige came to see Retha Mae about a week after she was born and acknowledged the child as his. Rosa also testified that Lige contributed money for the support of the child. The testimony of Teressa was corroborated to some extent by the testimony of two white witnesses who appeared to have some knowledge of Lige's relationship to Teressa and Retha Mae, and the record shows that Retha Mae was living with Lige and Teressa in the boxcar shack at the time Lige was killed. It is true that other witnesses who were related to the deceased testified that Lige had made statements to them to the effect that he was not the father of Retha Mae. But there is ample testimony to support the finding of the hearing officer that Retha Mae was an acknowledged illegitimate child of the deceased, dependent upon the deceased, and we think that there was no error in the action of the lower court in affirming the award of compensation to Retha Mae.

Finally, the appellants' attorneys contend that the court erred in affirming the order of the commission granting compensation to each of the three above named children on the basis of twenty-five percent of the average weekly wages of the deceased. The appellants' attorneys contend that the amount of the award to each of the three children should have been limited to ten percent of the average weekly wages of the deceased.

 Section 9 (d) of the Workmen's Compensation Law provides "If there be a surviving child or children of the deceased, but no surviving wife or dependent husband, then for the support of each such child twenty-five per centum (25%) of the wages of the deceased; provided, that the aggregate shall in no case exceed sixty-six and two-thirds per centum (66 2/3%) of such wages, subject to the maximum limitations as to weekly benefits as set up in this act." The appellants' attorneys say that the deceased left a surviving wife, meaning thereby Ordlean Gray, from whom he had never been divorced; and the appellants' attorneys contend that although Ordlean Gray, because of her subsequent marriage to Phillip Wash, was definitely precluded by Section 2 (14) of the Workmen's Compensation Law from claiming benefits under the law as the widow of the deceased, yet she was still the "surviving wife" of the deceased, as those words are used in Section 9 (d), and compensation could therefore be awarded to each of the above named dependent children only in the amount of ten per cent of the average weekly wages of the deceased. The appellants' attorneys admit that they can cite no judicial opinion to support their contention, and we think there is no merit in the contention. The words "surviving wife," as used in Section 9 (d) means a widow who is entitled to compensation under the provisions of the law; and there was no error in the action of the commission in allowing compensation for the support of each of the above named children in the amount of twenty-five per cent of the average weekly wages of the deceased, it being understood of course that the compensation allowed shall be subject to the statutory provision that "the aggregate shall in no case exceed sixty-six and two-thirds per centum (66 2/3%) of such wages, subject to the maximum limitations as to weekly benefits as set up in this act."

The attorney for the appellees and cross appellants, in his cross-assignment of errors, and in his brief, says that

the lower court erred in affirming the order of the commission disallowing the claim of Jesse James Taylor for compensation as a dependent child of the deceased, and the claim of Teressa Jones Taylor for compensation as the widow of the deceased.

But we think that there was no error in the finding of the hearing officer and the commission that the proof was insufficient to show that Jesse James Taylor was the acknowledged illegitimate son of the deceased, and that there was no error in the finding of the hearing officer and the commission that Teressa Jones Taylor by living in open adultery with T. C. Forest in the State of California, after her separation from Lige Taylor in 1943, was disqualified to claim as a widow of the deceased, under Section 2 (14) of the Workmen's Compensation Law.

 Jesse James Taylor's claim is wholly unlike that of Retha Mae Taylor. The record shows that Jesse James Taylor was born four years before his mother entered into a ceremonial marriage with Lige Taylor. If we take into consideration Lige Taylor's philandering habits, which he seems to have acquired at an early age, it cannot be said that it is entirely improbable that he was the father of Jesse James; and Teressa says that Lige was his father. But, if we also take into account the fickle nature and loose morals of Teressa herself, as reflected in the testimony of the witnesses, it cannot be said that Teressa's statement concerning Jesse James' parentage had to be accepted as proof of the fact that Lige Taylor was the father of Jesse James. Lige was living with his wife, Ordlean Gray, when Jesse James was born; and after Lige separated from Ordlean he entered into a ceremonial marriage with Ella Lee Hamilton and lived with her about a year and a half. Lige then married Jesse James' mother in the spring of 1939. Lige's father and uncle, and one of Lige's brothers, testified that Lige had told them that Jesse James was not his son; and Ella Lee

Hamilton testified that Lige told her that he was not the father of any of Teressa's children. Jesse James' birth certificate showed that the name given to him at the time of his birth was Jesse James Jones. The hearing officer heard all of the above mentioned witnesses testify; and it cannot be said that his finding that the proof was insufficient to show that Jesse James was an acknowledged illegitimate child of Lige Taylor, or that he was dependent upon Lige Taylor for support at the time of Lige's death, is against the weight of the evidence.

We think that the hearing officer was also manifestly correct in holding that Teressa Jones Taylor was not the "widow" of Lige Taylor, deceased, as that word is defined in Section 2 (14) of the Workmen's Compensation Law. Section 2 (14) expressly provides that "The term 'widow' or 'widower' as contemplated in this act shall not apply to any person who has since his or her separation from decedent entered into a ceremonial marriage or lived in open adultery with another." Teressa separated from Lige, according to her own testimony, in 1943 or 1944, and went to California. There she fell in with one T. C. Forest, with whom she maintained adulterous relations for a period of several months, and as a result of that illicit relation she gave birth to another illegitimate child. By the terms of the statute itself, Teressa was precluded from claiming the right to be recognized as the "widow" of Lige Taylor after his death. And we think that the hearing officer and the commission were correct in holding that the proof of the resumption of marital relations between Lige and Teressa two months before Lige's death was not sufficient to establish Teressa's claim as the widow of the deceased under Section 2 (14) of the Workmen's Compensation statute.

The judgment of the lower court affirming the orders of the hearing officer and the Workmen's Compensation Commission awarding compensation for the support of each of the three dependent minor children of the

deceased, namely, Lige Taylor, Jr., Annie Helen Taylor and Retha Mae Taylor, in the amount of twenty-five percent of the average weekly wages of the deceased, is modified so as to show that the aggregate amount payable to the three children shall not exceed the statutory limitation of sixty-six and two-thirds percent (66 2/3%) of the average weekly wages of the deceased; and the judgment of the lower court as thus modified is affirmed on direct appeal and on cross-appeal.

Modified and affirmed on direct appeal and affirmed on cross-appeal.

*McGehee, C. J.*, and *Lee, Arrington* and *Ethridge, JJ.*, concur.

---

ON MOTION TO CORRECT JUDGMENT

June 8, 1953 34 Adv. S. 210 65 So. 2d 461

McGEHEE, C. J.

In the entry of the final judgment in the above styled cause, which affirmed the judgment of the circuit court as modified for the purpose of clarification, there was omitted any provision for the allowance of six percent per annum on each payment of compensation from its due date, and for the assessment of the five percent statutory damages on all payments of compensation due unto the appellees at the time this cause was affirmed on March 9, 1953. The motion now before us to correct this error in the judgment as rendered was not filed until June 1, 1953, whereas Rule 19 of the Revised Rules of the Supreme Court of Mississippi adopted December 1, 1952, but which were not published and distributed to any Members of the Bar throughout the State until sometime in February of 1953, provides that: "All motions to retax costs or for the awarding or disallowance of 5% damages on appeal or to correct any judgment shall

be filed within sixty days from the entry of the final judgment in the case. . . .''

However, it is provided under Rule 33 of such Revised Rules that thé same ''may be relaxed or dispensed with by the Court in any case where it shall be manifest to the Court that strict adherence to them will work surprise or injustice.'' It would appear that the attorney for the appellees was either not advised as to the change in the time allowed for filing the motion to correct the judgment, or that he assumed that the interest and the statutory damages had been included therein. Then, too, he may have been relying upon our former decisions as to the authority of the Court to modify or correct its judgments at any time.

Although the rules were printed in January 1953 and distributed by mail to many Members of the Bar sometime during the month of February 1953, and were published in the Advance Sheets of the Mississippi Reports, we do not think that a sufficient time had elapsed when the judgment in this cause was rendered on March 9, 1953, to enable the Members of the Bar throughout the State to become thoroughly familiar with the details as to the changes in the rules so as to justify a refusal on the part of the Court to entertain this motion to allow such interest and statutory damages by relaxing Rule No. 19 under and by virtue of the authority reserved under Rule 33 of the Revised Rules of the Court of December 1, 1952.

Prior to the convening of the next term of the Court on the Second Monday in September of this year, a sufficient opportunity will have been afforded every Member of the Bar to become familiar with the fact that our rules have been revised and be therefore put on inquiry as to what changes have been made therein, and so as to justify our insistence on a compliance therewith.

It should be noted that it was not until March 16, 1953, in the case of Reed Construction Co., et al. v. Martin,

No. 38538, reported in the Advance Sheets of the Mississippi Reports, Vol. 24, p. 43, that this Court decided the question as to whether the five percent damages on affirmance should be allowed on the entire award of compensation under the Workmen's Compensation Act, or merely on the payments in arrears at the time of our judgment of affirmance. We have therefore concluded that we should entertain this motion and sustain the same so as to allow the six percent interest per annum and the five percent damages on the payments which had accrued and become due and payable to the date of March 9, 1953. The motion in that behalf will therefore be sustained.

All Justices concur.