AULTMAN *v.* CROSBY CHEMICALS, INC.

No. 39329          November 8, 1954          75 So. 2d 458

*W. W. Dent,* Collins; *Williams & Williams,* Poplarville, for appellant.

*Hall & Callender,* Columbia, for appellee.

McGEHEE, C. J.

The sole question presented in this case under the Workmen's Compensation Law is whether or not the appellant, Virgie Aultman, who is 34 years of age and the unmarried feeble-minded daughter of the deceased employee, Leo Autman (or Leo Aultman or Cleo Aultman), and who is incapable of self-support on account of mental disability, was wholly dependent upon the employee father within the meaning of Section 6998-02, Code of 1942 as recompiled, and which declares, among other things, that 'Child,' 'grandchild,' 'brother,' and 'sister' include only persons who are under eighteen (18) years of age, and also persons who, though eighteen (18) years of age or over, are wholly dependent upon the deceased employee and incapable of self-support by reason of mental or physical disability."

It is shown by the proof that the appellant, Virgie Aultman, is the legitimate daughter of the deceased employee and Roberta Aultman; that her parents separated about 22 years prior to the death of the said employee, and that they were never divorced; that within a very short time thereafter the husband left Covington County where he and Roberta were residing and took up his abode at Picayune, in Pearl River County; that the husband celebrated a ceremonial marriage about twenty

years ago with another woman named "Bessie," who became known as Bessie Aultman, and she thereafter continued to live with the employee until the date of his death on December 9, 1951; that subsequent to his second marriage, the employee and his wife Bessie assumed the custody and support of a foster child, Waddell Langham; that his wife Bessie and the foster child were dependent upon the earnings of the employee for their support and maintenance up to the date of his death; that his former wife, Roberta Aultman, within a few years after she and the employee had separated, became married to one Bill Boykin, and that Roberta and Bill Boykin lived together until her death on October 1, 1945, which was for a period of approximately twelve years; that during the time Roberta and Bill Boykin lived together, the said Bill Boykin, with the help of Roberta, supported her children by her former marriage with Leo Autman (Leo or Cleo Aultman), and that her children consisted of Virgie (the claimant), Robert, and Willie, all children of the said deceased employee; that the three children were small when Roberta married Bill Boykin, and that Willie died soon thereafter; that at the death of Roberta, she owned a small farm consisting of six acres of land in Covington County, and that at her death, in 1945, her son Robert and his wife, and her daughter, Virgie, continued to live together on this little farm and that Virgie was thereafter almost wholly dependent upon her brother Robert for support and maintenance; that Virgie had been so feeble-minded all of her life as to be incapable of self-support because of her mental disability; that although unmarried, Virgie has three children who have also been wholly dependent upon Robert, the brother of their mother, with the exception that Virgie is supposed to have inherited a one-half undivided interest in the six-acre farm at the death of her mother (it appears that Bill Boykin has made no claim to an undivided interest therein as an alleged heir of Roberta) and has been able to perform

labor only in picking cotton during the cotton-picking season and to the extent of drawing and bringing in a bucket of water; that she has been mentally incapable of doing any of the washing and ironing, or cooking in the home, and of doing anything on the farm except during the harvesting season, and has never been able to pick more than about fifty pounds of cotton per day; that her brother Robert and his wife have no children of their own; and that following the death of Roberta, the father of the claimant, Virgie Aultman, went from Picayune, in Pearl River County, to the home of Robert in Covington County, discussed the situation which then prevailed in regard to the support of Virgie and agreed to help Robert to some extent in supporting her, but did not carry out this agreement except to the extent of making small contributions in that behalf from time to time.

The foregoing facts were shown by the testimony of Tom Aultman, the paternal grandfather, and that of Bill Boykin, of Robert Aultman, and of Bessie, the second wife of the employee, who lived with him for nearly twenty years prior to his death, as aforesaid. Robert did testify that after the death of his mother, Roberta, there were contributions made by Leo or Cleo Autman (or Aultman) for the support of the claimant Virgie, which Robert estimated to be approximately $250 or $300 per year, but Bessie, the wife of the said employee, testified that she was handling the pay check of the employee during all this period of time and that she would give Robert five or ten dollars at a time, and on one occasion the sum of $30, when Robert would come to see his father at Picayune, and that from time to time she would send five or ten dollars to Robert for the support of Virgie, and she was positive that the sums contributed would not aggregate more than $50 per annum. Bessie was unable to dispute the testimony of Robert to the effect that about one month prior to

the death of the deceased employee he came to Robert's home in Covington County and gave him the sum of $50 for the support of the claimant Virgie, unless this testimony of Robert may have been contradicted by inference from the fact that Bessie handled the pay check and used the same for the living expenses of the employee and of herself and the foster child, Waddell Langham.

Upon the conflicting testimony about the amount contributed annually by the employee for the support of his daughter, the claimant Virgie, the attorney-referee held that the evidence was insufficient to show that this claimant was wholly dependent upon her father within the meaning of Section 6998-02, Code of 1942, supra. This finding of fact by the attorney-referee was affirmed by the full commission and also by the circuit court. We assume that the attorney-referee and the commission adopted, as true, the testimony of Bessie as to the extent of the contributions made by her for the employee, since the testimony of Robert appears to be unsatisfactory in that he received most of the contributions by unregistered mail and kept no account thereof, and was merely giving an estimate of the amount contributed annually. At any rate, we would not be justified in reversing the finding of the attorney-referee, affirmed by the full commission and by the circuit court on this issue of fact.

We have carefully considered the cases cited and the excerpts quoted from the text writer, Larson, by the claimant in her brief, and while her claim has a strong appeal to us in the light of the humanitarian purpose of the Workmen's Compensation Law, we are nevertheless of the opinion that it does not come within the requirement of the statute in question that she be wholly dependent upon the employee for support.

If it had been her brother Robert who had been killed by an accident that occurred in the course of his employment, and he had been covered by the Workmen's Com-

pensation Law, a claim of Virgie for death benefits on the account of the death of her brother under the foregoing facts and circumstances would have been compensable. In the instant case the responsibility of supporting the claimant had been assumed and performed by her mother, Roberta, and her stepfather, Bill Boykin, for a period of approximately twelve years and until the death of her mother in 1945, and this responsibility was thereupon assumed by her brother Robert subject to such assistance as her father felt disposed to give from time to time and which the triers of the facts thought was insufficient to establish that she was wholly dependent upon the latter.

We have carefully considered the cases of Deemer Lumber Co. et al. v. Hamilton, 211 Miss. 673, 52 So. 2d 634, and Watkins et al. v. Taylor et al., 216 Miss. 822, 63 So. 2d 225, and are of the opinion that those cases are clearly distinguishable on their facts from the instant case. The Deemer case did not involve a child, grandchild, brother or sister, such as are dealt with in Section 6998-02, Code of 1942, supra; and the Taylor case involved minor children. In neither of those cases was the claimant required to be "wholly dependent" as is required by the above mentioned statute in regard to a child over eighteen years of age and who is "incapable of self-support by reason of mental or physical disability."

Nor do we think that the isolated cases referred to by Larson on Workmen's Compensation Law, Vol. 2, Sec. 63.13, are in line with the weight of authority. Moreover, that text states that: "Even total dependency is consistent with the receipt of some other income, if insubstantial or sporadic." This statement would sustain the idea that the claimant in the instant case was totally dependent upon her brother Robert, and that this fact is consistent with the receipt of the insubstantial or sporadic contributions made by her father.

We have likewise carefully considered the authorities cited in the brief of the appellant as to the legal responsibility of a parent to support his child, even though the child may be over eighteen years of age, if wholly incapable of self-support because of mental or physical disability. But, here, we are not concerned with the question of whether or not this feeble-minded daughter, who was 34 years of age but wholly incapable of self-support by reason of mental disability, could have enforced a legal liability on the part of her father to support her by a legal proceeding against him in that behalf during his lifetime, but the question presented to the attorney-referee, full commission, and the circuit court was whether or not under all the facts and circumstances she was in truth and in fact wholly dependent upon her father for support at the time of and shortly prior to his death, or whether she had been dependent primarily during most of her life upon the efforts of someone else for a livelihood. We cannot substitute our judgment in lieu of the finding of the triers of the fact on that issue, and especially where such finding is clearly supported by a preponderance of the evidence.

The record does not disclose whether or not the death of the employee was due to the negligence of the employer. If such were the fact, then the effect of the Workmen's Compensation Law would be to deprive this legitimate daughter of the deceased employee of her right of recovery under our "wrongful death" statute; and if such were the case, it would seem to the writer of this opinion (expressing only his own view) that our Workmen's Compensation Law should have been so written as to make the claim compensable, in response to the dictates of humanity. But the law is not so written; and while the claim makes a strong appeal to the Court, we are of the opinion that it is not compensable, but that the award of the entire death benefits in favor

of Bessie Autman (Aultman), as the widow, and to Waddell Langham, the foster child of Bessie and the deceased employee, as made by the attorney-referee, the full commission, and the circuit court should be affirmed.

Affirmed.

*Lee, Kyle, Holmes,* and *Gillespie, JJ.,* concur.